IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LONNIE DODGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10-0038-CV-W-ODS |
| | ) | |
| CITY OF BELTON, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND OPINION
(1) GRANTING MOTION FOR SUMMARY JUDGMENT (DOC. 40), AND
(2) DENYING MOTION TO EXCLUDE EXPERT TESTIMONY (DOC. 45)**

This is an employment discrimination case. Lonnie Dodge was hired by the City of Belton Police Department in 2001. He was promoted to the rank of corporal and was working as a detective in the juvenile unit, along with other duties.

Dodge was arrested on September 8, 2007, for driving while intoxicated. He pled guilty to a lesser charge–careless and imprudent driving. Dodge did not tell his supervisor of his arrest or conviction.

The Police Department discovered Dodge's DWI arrest when it ran a background check on him. James Person, Chief of Police, gave Dodge the choice to either resign or be terminated because of the arrest. Dodge refused to resign and he was suspended with pay.

Dodge was given notice of a pretermination hearing. The notice advised Dodge that he would be able to present evidence and testimony with the assistance of counsel at the hearing. The notice also advised Dodge that he was being charged with intentionally concealing the arrest from the police department in an effort to avoid disciplinary action. Dodge was accused of violating the six sections of the Belton Police Department's general orders and four sections of the Belton personnel code.

After receiving the pretermination hearing notice, Dodge notified the Police Department that he would be resigning effective June 6, 2008. Dodge claims he

resigned because Capt. Spears of the Department told him that, if he resigned, the Department would not seek to revoke his police officer's license. The day after submitting his resignation letter, Dodge changed his mind and attempted to rescind his resignation. Chief Person informed Dodge it was too late to rescind his resignation because it had already been forwarded to City Hall. Dodge's employment ended on June 6.

Dodge filed this lawsuit alleging he was terminated based on his race (white) because an African-American employee also failed to report an arrest and was not terminated. Count One alleges a violation of the Missouri Human Rights Act (MHRA); Count Two alleges a violation of Title VII of the Civil Rights Act of 1964. The City has moved for summary judgment.

*Analysis*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court concludes the City is entitled to summary judgment.

Any person claiming discrimination under MHRA must file their complaint with the Missouri Commission on Human Rights within 180 days of the alleged act of discrimination. Mo. Ann. Stat. § 213.075.1. Dodge does not dispute that he filed his charge of discrimination over 180 days after the latest day of alleged discrimination, nor does he argue that an equitable exception excuses his untimely filing. Because he failed to comply with the limitations period, Dodge's state-law claim is barred. *See Hill v. St. Louis University*, 123 F.3d 1114, 1118 (8th Cir. 1997). The City is granted summary judgment on this claim.

Dodge may survive summary judgment on his Title VII claim either by direct evidence, or by creating an inference of discrimination under the *McDonnell Douglas* burden-shifting framework. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 (8th Cir. 2010). Dodge presents no direct evidence, so the *McDonnell Douglas* framework

applies.

Under *McDonnell Douglas*, the plaintiff initially has the burden to establish a prima facie case of discrimination. *Id.* To establish a prima facie case, Dodge must show "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Id.* at 874.

As a white employee, Dodge was a member of a protected class. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278–79 (1976). And there is nothing to indicate that Dodge—who previously won an award for officer of the year—was failing to meet his employer's legitimate expectations. *See Lake*, 596 F.3d at 874 ("Lake establishes his prima facie case if, setting aside Yellow's reason for firing him, he was *otherwise* meeting expectations or *otherwise* qualified" (citation omitted)).

However, Dodge cannot establish he suffered an adverse employment action. "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Clegg v. Arkansas Dept. of Correction*, 496 F.3d 922, 926 (8th Cir. 2007) (internal quotations and citation omitted). Dodge contends he suffered an adverse employment action because he was told to resign or be terminated, he was suspended, and he was accused of violating Police Department and City personnel policies.

Since he resigned and was not formally terminated, the only way Dodge can establish an adverse employment action through the loss of his job is by showing that the City constructively discharged him. "To constitute a constructive discharge, the employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit." *Summit v. S-B Power Tool, (Skil Corp.), a Div. of Emerson Elec. Co.*, 121 F.3d 416, 421 (8th Cir. 1997) (citation omitted).

"A constructive discharge arises only when a reasonable person would find the conditions of employment intolerable." *Id.* (citation and emphasis omitted). "The conduct complained of must have been severe or pervasive enough to create an

3

objectively hostile or abusive work environment . . . ." *Tadlock v. Powell*, 291 F.3d 541, 547 (8th Cir. 2002) (internal quotations and citation omitted). And "[a] plaintiff must take affirmative steps short of resigning that a reasonable employee would take to make her conditions of employment more tolerable." *Jones v. Fitzgerald*, 285 F.3d 705, 716 (8th Cir. 2002) (citation omitted).

Chief Person did not create intolerable working conditions by notifying Dodge of his intention to terminate Dodge's employment or by notifying him that a pretermination hearing would be scheduled. Dodge does not dispute that, in the City's disciplinary system, Chief Person shares the responsibility with the City Personnel Officer to *recommend* termination to the City Administrator, who has the final authority to either confirm or modify the recommendation.[1] And Chief Person's recommendation only occurs after he and the City Personnel Officer conduct the pretermination hearing, where Dodge would have had the opportunity to appear with counsel and present evidence in his favor.

The prospect of undergoing the City's termination procedures was not an intolerable condition of employment; Dodge could have taken advantage of these procedures, rather than resigning. His assertion that he had no choice in the matter is unsupported by any evidence.

Moreover, the Eighth Circuit has held that "an employee's being told that he or she will be fired for cause does not, in and of itself, constitute constructive discharge." *Summit*, 121 F.3d at 421. Thus, the fact Dodge was notified he would be terminated for failing to report his arrest for DWI does not, in and of itself, constitute constructive discharge.

Nor does Dodge's suspension with pay constitute an adverse employment action. Dodge provides no argument how his suspension with pay produced a material

---

[1] In his petition, Dodge alleged Chief Person warned him that no matter how hard Dodge fought to keep his job, Chief Person would fight harder to terminate him. Although this establishes Chief Person's intention to seek Dodge's termination, it does not establish Dodge's termination was a foregone conclusion, since Chief Person did not possess authority over the final decision.

4

employment disadvantage, and Eighth Circuit law would not support such a conclusion. *See Singletary v. Mo. Dep't of Corr.,* 423 F.3d 886, 891-92 (8th Cir. 2005) (holding that investigatory suspension with pay was not adverse employment action where plaintiff was promptly returned to original position once investigation concluded); *Moisant v. Air Midwest, Inc.*, 291 F.3d 1028, 1032-33 (8th Cir. 2002) (holding that what employee referred to as "'suspension with pay'" was not adverse employment action because employer simply allowed employee to remain at home to recover from alleged sexual assault, with "no change whatever in her position"). Although Dodge was no longer employed after his suspension, this is because he voluntarily resigned, not because the City constructively discharged him.

In arguing he suffered an adverse employment action, Dodge also notes that he was accused of violating various Police Department employee conduct provisions and the City of Belton personnel code. However, Dodge does not identify any immediate consequences of the accusations themselves. Dodge has not persuaded the Court that merely being accused of violations constitutes a material adverse change in employment.

Dodge has failed to show he suffered an adverse employment action. Since Dodge cannot establish a prima facie case of discrimination, the City is granted summary judgment on Dodge's Title VII claim.[2]

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: February 4, 2011　　　　　　　　　　UNITED STATES DISTRICT COURT

---

[2] The City's motion to exclude the testimony of Dodge's expert is denied as moot.